UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-1737 JGB (DTBx)** | Date | October 3, 2025 |
| Title | *Jose Luis Yasuhara v. Universal Trucking Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order (1) DENYING Plaintiff's Motion for Remand; and (2) VACATING the October 6, 2025, Hearing (IN CHAMBERS)

Before the Court is a Motion for Remand filed by Plaintiff Jose Luis Yasuhara. ("Motion," Dkt. No. 11.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.  The Court **VACATES** the hearing set for October 6, 2025.

## I.    BACKGROUND

On January 24, 2025, Plaintiff filed a Complaint in the Superior Court of California for the County of Riverside against Defendants Universal Trucking Inc., Universal Logistics Holdings Inc., Container Connections, Universal Intermodal Services, Inc., Deco Logistics, Inc., and Does 1-100, inclusive ("Defendants").  ("Complaint," Dkt. No. 1-1.)  The Complaint alleges ten causes of action: (1) violation of California Labor Code ("CLC") §§ 510 and 1198 for unpaid overtime; (2) violation CLC §§ 226.7 and 512(a) for unpaid meal period premiums; (3) violation of CLC § 226.7 for unpaid rest period premiums; (4) violation of CLC §§ 1194, 1197, and 1197.1 for unpaid minimum wages; (5) violation of CLC §§ 201 and 202 for final wages not timely paid; (6) violation of CLC § 204 for wages not timely paid during employment; (7) violation of CLC § 226(a) for non-compliant wage statements; (8) violation of CLC § 1174(d) for failure to keep requisite payroll records; (9) violation of CLC §§ 2800 and 2802 for unreimbursed business expenses; and (10) violation of California Business & Professions Code § 17200, et seq.  (See Compl.)

On July 7, 2025, Defendants removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711. ("Notice of Removal," Dkt. No. 1.) On September 4, 2025, Plaintiff filed a Motion to Remand. (Mot.) Defendant opposed the Motion on September 15, 2025. ("Opposition," Dkt. No. 13.) Plaintiff replied in support of the Motion on September 22, 2025. ("Reply," Dkt. No. 15.)

## II.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris v. KM Indus., Inc., 980 F.3d 694, 700 (9th Cir. 2020) (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence")).

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). But if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

### III. DISCUSSION

Plaintiff argues that the home-state exception to CAFA jurisdiction applies, thereby precluding this Court's jurisdiction. Additionally, Plaintiff contends that Defendants' calculations of the amount in controversy are insufficiently supported, and therefore do not satisfy Defendants' burden to establish jurisdiction by a preponderance of the evidence.

**A. Home State Exception**

CAFA includes an exception to jurisdiction for certain citizenship scenarios: "A district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The Court notes that the class definition contained in Plaintiff's Complaint is not the same as the definition cited to the Complaint in his Motion. In the Complaint, the proposed class is defined as:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment.

(Compl. ¶ 17.) In the Motion, however, Plaintiff contends that his proposed class definition is:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment **and who reside in California**.

(Mot. at 5 (emphasis added).) Given the home state standard's emphasis on where proposed class members are a citizens, this difference is potentially important. The Court will use the proposed class definition in the Complaint, as it is the operative proposed definition.
//
//
//

### 1. Citizenship of Proposed Class Members

The parties dispute whether the Court can infer that two-thirds of the proposed class members are California citizens based on the class definition. In Mondragon, the Ninth Circuit considered the two-thirds requirement in the local controversy exception, another exception in 28 U.S.C. § 1332(d)(4). Mondragon v. Cap. One Auto Fin., 736 F.3d 880, 881–82 (9th Cir. 2013). There, the Court held that "there must ordinarily be facts in evidence to support a finding that two-thirds of putative class members are local state citizens" if the parties dispute this point. Id. at 881. The Court went on the hold that "[a] pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question, but otherwise such a finding should not be based on guesswork." Id. at 881-82.

While Mondragon addressed the local controversy requirement, its language and that of the home state exception are essentially the same, and the Court sees no reason why the Mondragon analysis would not apply to the home state exception. Here, a pure inference is plainly insufficient because the proposed class is not, by its express terms, limited to California citizens. Plaintiff could have chosen to limit his proposed class as such, but he has not. The proposed class includes those who worked for Defendants "within the State of California," but plenty of individuals work in California who are not citizens of this state. And because the class includes former employees, no inference can be drawn from the proposed class itself that a sufficient number of those individuals remain California citizens—if they ever were. As such, the Court must rely on facts in evidence to support the finding that more than two-thirds of proposed class members are California citizens. Plaintiff has provided no such evidence. The Court cannot infer that two-thirds of the putative class members are California citizens.

### 2. Citizenship of Primary Defendants

Plaintiff argues that Deco Logistics, Inc. ("Deco"), should be considered the sole primary defendant, and that Deco is a California citizen. While it appears that Deco is a California citizen, the Complaint fails to delineate Deco in any way that would qualify it as a primary defendant and the other defendants as secondary. (See Mot.; Declaration of Brittany L. Shaw in Support of Motion, Ex. A.) Plaintiff contends that, because Deco is the only California citizen Defendant, it is logical to conclude that Deco "must be the most active participant in the alleged wrongdoings compared to the other defendants." (Mot. at 6-7.) Yet Plaintiff appears to level its allegations equally against all Defendants, and does not allege in the Complaint that Deco is somehow more responsible than the other Defendants. Again, Plaintiff could have chosen to sue only Deco, or to make allegations in his Complaint that make clear that Deco is the primary defendant, but he did not.

While Defendants bear the burden to show that removal is appropriate, invoking the home state exception imposes expectations on Plaintiff's own pleadings and evidence. Having failed to provide the Court with evidence or allegations showing that two-thirds of the proposed class are California citizens and that Deco is the primary defendant, the Court cannot apply the home state exception.

B.  **Amount in Controversy**

Plaintiff next argues that the Court lacks jurisdiction because Defendants have not adequately shown that the amount in controversy exceeds $5,000,000.  Specifically, Plaintiff argues that Defendants' evidence supporting their amount-in-controversy calculations is insufficient.

In Dart Cherokee, the Supreme Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." 574 U.S. at 89.  Here, such evidence is necessary because Plaintiff has contested the allegations in Defendants' Notice of Removal.

Defendants support their amount-in-controversy calculation with a declaration from Tom Monahan, the Vice President, Legal, for Defendant Universal Logistics Holdings, Inc. ("Monahan Declaration," Dkt. No. 1-5.)  The Ninth Circuit has repeatedly relied upon declarations by company officers who have reviewed records relevant to a claim.  See Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010); Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989, 991(9th Cir. 2022).  This is especially so where the Complaint itself does not allege that damages will be less than $5,000,000.  See Lewis, 627 F.3d at 398.  The Court here only addresses as many amount-in-controversy calculations as it takes to satisfy the $5,000,000 minimum.

First, Defendants contend that, for the waiting time penalties claim, the amount in controversy is $2,403,840.  (Notice of Removal ¶ 29.)  This is based on the Monahan Declaration and their calculation of a $25.04 average salary per hour, multiplied by eight-hour workdays, multiplied by 30 days, the maximum period under California law, multiplied by the 400 proposed class members who separated from employment during the proposed period.  (See id. ¶¶ 28-29.)  The Ninth Circuit has found it reasonable to assume a full 30-day period for every putative class member where no more detail is alleged in the Complaint, even if some of them did not wait 30 days given a similar four-year period for the proposed class.  See Jauregui, 28 F.4th at 993–94.  Plaintiff does not present any evidence to dispute this calculation.  Defendants have therefore satisfied their burden of establishing an amount in controversy of $2,403,840 for the waiting time penalties claim.

Second, Defendants contend that, for the overtime claim, the amount in controversy is $2,366,280.  (Notice of Removal ¶ 33.)  This is based on the Monahan Declaration and their calculation of a $25.04 average salary per hour, multiplied by 1.5 to account for overtime compensation, multiplied by 31,500 workweeks for all putative class members over the class period, multiplied by two hours of alleged unpaid overtime per workweek.  (See id.)  Defendants' reliance on two hours per week of unpaid overtime is based on district courts' determinations that such an assumption in reasonable in similar cases, especially where plaintiffs offer no specificity about the extent of the alleged violations.  See Stanley v. Distribution Alternatives,

Inc., 2017 WL 6209822, at *2–3 (C.D. Cal. Dec. 7, 2017); Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017). Defendants have satisfied their burden as to the amount in controversy on this claim as well.

Third, Defendants contend that they should be able to assume a 100% violation rate in calculating the amount in controversy on the wage statement violations claim, which would result in a $359,150 amount in controversy. Under California law, employees are entitled to $50 or the value of the violation (whichever is greater) on a first wage statement violation, and $100 on subsequent violations. CLC § 226(e). Based on the Monahan Declaration, Defendants collectively employed at least 217 non-exempt, hourly employees in California during the proposed class period and issued at least 3,700 wage statements. (Id. ¶ 6.) Courts in this district have repeatedly found that 100% violation rate assumptions are appropriate when the Complaint is insufficiently precise to limit the assumption. See Lucas v. Michael Kors (USA), Inc., 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018); Alfaro v. Banter by Piercing Pagoda, 2022 WL 1284823, at *3 (C.D. Cal. Apr. 29, 2022). Defendants have thus also satisfied their burden as to the amount in controversy on this claim.

Taken together, these three claims' amounts in controversy exceed $5,000,000, thereby satisfying CAFA jurisdiction. Because amount in controversy is satisfied and the home state exception does not apply, the Court **DENIES** Plaintiff's Motion.

Finally, the Court notes that its reliance on Defendants' calculations in large part stems from the lack of specificity in Plaintiff's Complaint. Plaintiff could have pled his allegations in a way that would restrain Defendants' calculations and potentially limit the amount in controversy below the CAFA threshold. But what Plaintiff has provided in his Complaint and Motion do not give the Court any reason to doubt Defendants' calculations on at least these three claims. Absent greater specificity on Plaintiff's part, Defendant is provided far more leeway when calculating the amount in controversy.

## IV.     CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's Motion. The October 6, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**